IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHRISTIE CARMICHAEL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. 3:12-cv-706-P |
| MONARCH DENTAL CORPORATION, | § | |
| SMILE BRANDS SOUTHWEST, INC., | § | |
| and MODERN DENTAL | § | |
| PROFESSIONALS-DALLAS/FT. | § | |
| WORTH, P.C., | § | |
| | § | |
| Defendants. | | |

## ORDER

Now before the Court is Defendants' Motion for Summary Judgment, filed on November 26, 2013. Docs. 26-28. Plaintiff filed her Response on January 15, 2014. Doc. 32. Defendants filed their Reply on January 17, 2014. Doc. 33. After reviewing the briefing, the evidence, and the applicable law, the Court GRANTS Defendants' Motion for Summary Judgment.

**I.     Background**

Christine Carmichael ("Carmichael") is a licensed dental hygienist. Doc. 28 at 4. Carmichael worked for Monarch Dental Corporation ("Monarch") from January 2010 until January 2012. Doc. 28 at 5. When she began working for Monarch, Carmichael worked on an as-needed basis at Monarch's Plano office. Doc. 28 at 7-8. Carmichael then began working in Monarch's Richardson office. Doc. 28 at 7. While at the Richardson office, Carmichael worked Monday through Friday and occasionally on Saturday. Doc. 28 at 10; Doc. 28-1 at 14-44.

Monarch uses an electronic time-keeping system for its employees to track and report their time. Doc. 28 at 27. Employees are required to personally log in and out at the beginning and end of each shift and meal period. Doc. 28-2 at 85. Managers are responsible for "reviewing time records for accuracy and making any agreed upon, necessary adjustments for payroll processing." Doc. 28-2 at 85. For example, managers may manually record an employee's actual start time if she is unable to clock in before beginning her shift. Doc. 28 at 27. Monarch pays its employees based on the number of hours they reported working. Doc. 28 at 27. Hourly employees, such as Carmichael, are paid 1.5 times their regular hourly rate for time worked in a week above 40 hours. Doc. 28 at 27.

While working at Monarch, Carmichael clocked in and out electronically, unless there was a problem with the electronic system. Doc. 28 at 11, 20. If there was a problem with the electronic system, Carmichael called the help desk or asked a manager to clock her in. Doc. 28 at 11. Occasionally, Carmichael would clock in and out using a paper timesheet. Doc. 28 at 23-25. Carmichael maintains that the electronic time system was edited to reduce the hours she actually worked, resulting in Monarch's failure to pay her for time worked. *See, e.g.*, Doc. 28 at 6, 13-15. Carmichael now sues for unpaid compensation. Doc. 14.

## II. Motion for Summary Judgment

Under Federal Rule of Civil Procedure 56, courts "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The moving party bears the burden of informing the

district court of the basis for its belief that there is an absence of a genuine issue for trial and of identifying those portions of the record that demonstrate such absence. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, all evidence and reasonable inferences to be drawn therefrom must be viewed in the light most favorable to the party opposing the motion. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Once the moving party has made an initial showing, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. Fed. R. Civ. P. 56(e); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The party defending against the motion for summary judgment cannot defeat the motion unless he provides specific facts demonstrating a genuine issue of material fact such that a reasonable jury might return a verdict in his favor. *Liberty Lobby*, 477 U.S. at 247-48. Mere assertions of a factual dispute unsupported by probative evidence will not prevent summary judgment. *See id.* at 249-50. In other words, conclusory statements, speculation, and unsubstantiated assertions will not suffice to defeat a motion for summary judgment. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc); *see also Abbott v. Equity Grp., Inc.*, 2 F.3d 613, 619 (5th Cir. 1993) ("[U]nsubstantiated assertions are not competent summary judgment evidence." (citing *Celotex*, 477 U.S. at 324)). Furthermore, a court has no duty to search the record for evidence of genuine issues. Fed. R. Civ. P. 56(c)(1) & (3); s*ee Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). It is the role of the fact finder, however, to weigh conflicting evidence and make credibility determinations. *Liberty Lobby*, 477 U.S. at 255.

Carmichael sues to recover unpaid overtime wages and compensation for hours worked but not recorded or paid under (1) the Fair Labor Standards Act and (2) the Texas Labor Code. Doc. 1. Defendants move for summary judgment on all claims. Docs. 26-27.

### A. Fair Labor Standards Act

The Fair Labor Standards Act ("FLSA") requires employers engaged in commerce to pay employees a specified minimum wage. 29 U.S.C. § 206(a). Under the FLSA, employers are also required to pay employees who work more than 40 hours per week one and one-half times their regular pay rate for each hour of overtime. 29 U.S.C. § 207(a). While Carmichael generally alleges in her Complaint that Monarch violated the FLSA, she fails to cite to the specific provisions that Monarch violated. *See generally* Doc. 1. Instead, she identifies her claims as (1) misclassified as exempt employee; (2) unpaid overtime compensation under the FLSA; and (3) failure to compensate for "off-the-clock" work.[1] Doc. 14.

Properly understood, it appears that Carmichael's first two claims are both alleging failure to pay overtime compensation in violation of § 207.[2] *See* Doc. 14 at 5-7. Carmichael's last FLSA claim is characteristic of a "gap time" claim. A gap time claim, which is also referred to as a "straight time" claim, "is one in which an employee has not worked 40 hours in a given week but seeks recovery of unpaid time worked, or in which an employee has worked over 40 hours in a given week but seeks recovery for unpaid work under 40 hours." *Lundy v. Catholic Heath Sys. of Long Island, Inc.*, 711 F.3d 106, 115 (2d Cir. 2013); *see also Green v. Dallas Cnty.*

---

[1] While Monarch points out the lack of clarity of the relief Carmichael seeks in its Motion for Summary Judgment, Doc. 27, Carmichael does not address the claims in her Response, Doc. 32.

[2] As Monarch correctly notes, misclassifying an employee as exempt does not, in and of itself, create a cause of action. Doc. 27 at 11; *see* 29 U.S.C. § 216(b) (creating private cause of action for failure to pay minimum wage, failure to pay overtime, and retaliation but not for improperly classifying employees); *see also Oetinger v. First Residential Mortg. Network, Inc.*, No. 3:06-CV-381-H, 2009 WL 2162963, at *3 (W.D. Ky. July 16, 2009) ("Merely being classified as exempt does not give rise to a right of action under 29 U.S.C. 216(b). Such right under the FLSA only accrues once the employee is owed unpaid amounts." (citing 29 U.S.C. 216(b))).

*Schs.*, No. 3:04-CV-891-P, 2005 WL 1630032, at *3 (N.D. Tex. July 6, 2005) (Solis, J.). While the Fifth Circuit has yet to address the viability of gap time claims, this Court, as well as others in this circuit, have held that gap time claims that do not implicate the minimum wage or overtime pay requirements are generally not cognizable under the FLSA. *See Valcho v. Dallas Cnty. Hosp. Dist.*, 658 F.Supp.2d 802, 811 (N.D. Tex. 2009); *Newsom v. Carolina Logistics Servs., Inc.*, No. 2:11CV172-DCB-JMV, 2012 WL 3886127, at *1 (N.D. Miss. Sept. 6, 2012); *Green*, 2005 WL 1630032, at *3. Thus, gap time claims are only cognizable where an employer's failing to pay straight time resulted in its failing to pay overtime correctly or in its failing to pay minimum wage over a given workweek.[3] *See Valcho*, 658 F.Supp.2d. at 811, *Newsom*, 2012 WL 3886127, at *1; *Green*, 2005 WL 1630032, at *3. Therefore, as Carmichael has already pleaded an overtime claim, the Court construes her "off-the-clock" claim as a minimum wage claim. The Court addresses each in turn.

### i. Overtime Compensation

As stated, employers must pay employees at one and one-half times the regular rate for hours worked in excess of 40 hours during a seven-day workweek. 29 U.S.C. § 207(a). While some employees are exempt from overtime, Monarch does not argue that Carmichael is exempted from the FLSA's overtime provision. Doc. 27 at 12. "An employee bringing an action pursuant to the FLSA, based on unpaid overtime compensation, must first demonstrate that she has performed work for which she alleges she was not compensated." *Harvill v.*

---

[3] Since these courts have issued their opinions, the Second Circuit has held that "so long as an employee is being paid the minimum wage or more, FLSA does not provide recourse for unpaid hours below the 40-hour threshold, even if the employee also works overtime hours in the same week." *Lundy*, 711 F.3d at 116. Relying on *Lundy*, a court in this circuit recently held that "so long as section 206 is not violated, an employee may not recover for straight time claims under the FLSA. This is so even when that employee has worked overtime." *Carman v. Meritage Homes Corp.*, No. 4:11-CV-1824, 2014 WL 808257, at *12 (N.D. Tex. Feb. 28, 2014). However, because any overtime or minimum wage claims that Carmichael has fail on the merits, the Court does not address these cases.

*Westward Commc'ns, L.L.C.*, 433 F.3d 428, 441 (5th Cir. 2005) (citing *Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946)). To meet the requisite burden of proof, the employee need only prove that she has in fact performed work for which she was improperly compensated by producing sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. *See id.* Once the employee has made such a showing, the "burden shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id.* Monarch argues that Carmichael has provided no evidence that she worked uncompensated overtime. The Court agrees.

Carmichael has merely asserted, in a conclusory fashion, that she worked overtime hours for which she was not compensated. Carmichael reaches this conclusion based on her belief that her timesheets were altered to show less time than she actually worked. Doc. 28 at 6, 13-15. However, Carmichael provides no evidence of her time being changed. She does not point to any specific pay period for which her paystub does not accurately reflect the number of hours she worked. Doc. 28 at 6, 10-11, 13-14. Indeed, when asked what pay periods she thought were incorrect, Carmichael responded that she would "have to assume all of them." Doc. 28 at 13. Carmichael's belief that she was not paid for all hours worked stems from her "knowing at the end of the week what time [she] got home, what time [she] made dinner, what time [she] got [to work], what [she] did during [a] week," and her belief that when she clocked out at the end of the day, her timesheet did not accurately reflect the time she clocked in when she arrived in the morning. Doc. 28 at 13. However, as stated, Carmichael fails to specify any specific pay period for which the time in Monarch's records does not accurately reflect the time she clocked in. Additionally, the clock in and clock out times reflected in a timesheet written by Carmichael

herself are consistent with the clock in and clock out times reflected in the electronic timesheets. *Compare* Doc. 28 at 23-25 *with* Doc. 28-1 at 7-76 *and* Doc. 28-2. Finally, while Carmichael asserts that $50,000 in overtime is owed to her, she was unable to identify any paperwork on which she relied to reach that number. Doc. 28 at 14.

Rather than attach any evidence to her Response, Carmichael merely argues that she believes that Monarch "maintained an illegal and fraudulent recordkeeping system." Doc. 32 at 7. However, such conclusory assertions, wholly unsupported by evidence, are insufficient to survive a motion for summary judgment. Though Carmichael states that her allegation that Monarch maintained a "fraudulent, deceptive, and illegal recordkeeping system" has "been confirmed by [Monarch's] own records," she does not point to any records evidencing any such fraud or illegality. Doc. 32 at 8. Indeed, Carmichael does not even explain in what way Monarch's recordkeeping system is fraudulent or illegal. *See* Doc. 32.

Monarch does acknowledge that, during the course of Carmichael's employment, Monarch managers made changes to Carmichael's timesheet. Doc. 28 at 28-30. However, the "majority of edits were made by managers to supply the time Carmichael started or ended work after she failed to clock in or clock out." Doc. 28 at 29. Other edits were made to correct errors Carmichael made, such as listing the correct location at which she was working. Doc. 28 at 29-30. Based on Monarch's records, Carmichael's time was manually reduced only twice, resulting in a total reduction of 1.1 hours. Doc. 28 at 28-29. However, to the extent that the 1.1 hours reduction was improper, adding the 1.1 hours to the total number of hours she worked in the week of the reduction would result in a workweek of 37.08 hours, meaning that there is no overtime for which she was unpaid. *See* Doc. 28 at 28-29; Doc. 28-1 at 11-12; Doc. 28-2 at 12-13. Though Carmichael urges the Court to ignore the evidence provided by Monarch, she

presents no evidence to refute Monarch or to support her conclusory assertions. *See generally* Doc. 32. Ultimately, Carmichael has provided no evidence "to show the amount and extent of [her uncompensated] work as a matter of just and reasonable inference." *Harvill*, 433 F.3d at 441 (quoting *Anderson*, 328 U.S. at 687-88). Thus, the Court GRANTS Monarch's Motion for Summary Judgment on Carmichael's overtime claims.

### ii. Minimum Wage

To satisfy the FLSA, Monarch was required to pay Carmichael the statutory minimum of $7.25 per hour. 29 U.S.C. § 206. Here, Carmichael testified that she was paid either $35 or $36 per hour. Doc. 28 at 9, 14. As stated, Carmichael has failed to produce any evidence "to show the amount and extent of [her uncompensated] work as a matter of just and reasonable inference." quoting *Anderson*, 328 U.S. at 687-88. To the extent that Monarch improperly reduced Carmichael's hours by 1.1 hours for one week in June 2010, the reduction resulted in a total of 35.98 hours instead of 37.08 hours. *See* Doc. 28 at 28-29; Doc. 28-1 at 11-12; Doc. 28-2 at 12-13. The failure to pay for the 1.1 hours would not have resulted in an average pay of less than $7.25 per hour for that week. Thus, as Carmichael does not dispute that she was paid well above the minimum wage for the time documented on her timesheets, the Court GRANTS Monarch's Motion for Summary Judgment on Carmichael's minimum wage claim.

### B. Texas Labor Code

Chapter 61 of the Texas Labor Code "governs an employer's obligation to pay wages to employees and provides criminal penalties for employers who violate the statute." *Abatement Inc. v. Williams*, 324 S.W.3d 858, 863 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (citing Tex. Lab. Code §§ 61.011-.020). "Chapter 61 creates a detailed administrative enforcement scheme through the [Texas Workforce Commission] and allows the possibility for

enforcement by the attorney general" of Texas. *Ihegword v. Harris Cnty. Hosp. Dist.*, 929 F.Supp.2d 635, 669 (S.D. Tex. 2013). However, Chapter 61 does not create a private right of action. *See, e.g.*, *id.*; *Abatement*, 324 S.W.3d at 864-65. Therefore, the Court GRANTS Monarch's Motion for Summary Judgment on Carmichael's Texas Labor Code claim.

### III. Conclusion

For the foregoing reasons, the Court GRANTS Monarch's Motion for Summary Judgment.

**IT IS SO ORDERED.**

Signed this 31st day of March, 2014.

*/s/ Jorge A. Solis*
JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE